```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ALABAMA
                              SOUTHERN DIVISION
```

FILED
99 DEC -6 AM 10: 13
U.S. DISTRICT COURT
N.D. OF ALABAMA

In Re:                              )
                                    )
ROCK WOOL MANUFACTURING             )      CV-99-J-1589-S
COMPANY, an Alabama Corporation,    )
     Debtor.                        )

```
                   IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE NORTHERN DISTRICT OF ALABAMA
                              SOUTHERN DIVISION
```

In Re:                              )
                                    )
ROCK WOOL MANUFACTURING             )      BK-96-08295-TBB-11
COMPANY, an Alabama Corporation,    )
     Debtor.                        )

ENTERED
DEC 0 6 1999

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER ON CONFIRMATION OF SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION FILED BY ROCK WOOL MANUFACTURING COMPANY

This matter came on for hearing on the 3rd day of December, 1999 for Confirmation of the Second Amended and Restated Plan of Reorganization filed by Rock Wool Manufacturing Company ("Rock Wool") on May 11, 1999, as previously amended by Order of the Court dated October 20, 1999 (the "Plan"). Present at the hearing were André M. Toffel, and David S. Moyer, attorneys for the Debtor in Possession, Daniel M. Phillips, the Legal Representative, Nancy Worth Davis, Chair of the Asbestos Claimants Committee, Sylvester F. Miniter, III, Consultant to the Debtor and the Proposed Trustee of the Asbestos Trust, Roger Warin, attorney for St. Paul Fire and Marine Insurance Company, J. Thomas Corbett, attorney for the Bankruptcy Administrator's Office, Eric Breithaupt, attorney for Mineral Products and Technology, and Sherri T. Freeman, attorney for SouthTrust Bank. No objections were filed to the Second Amended and Restated Plan of Reorganization, as previously amended by the October 20, 1999 Order, and none were voiced at the hearing.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

In accordance with the Federal Rules of Bankruptcy Procedure 7052 and 9014, and based on the evidence presenting during the hearing on Confirmation and at prior hearings in this case, the Court makes the following findings of fact and conclusions of law in support of confirmation of the Plan (collectively, the "Findings").



# I.
# JURISDICTION AND VENUE

A. Jurisdiction.

1. Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Court has jurisdiction to consider confirmation of the Plan.

2. The Confirmation Hearing is a core proceeding under section 157(b)(2)(L) of title 28 of the United States Code.

3. The Debtor is an entity eligible for relief under section 109 of title 11 of the United States Code (the "Bankruptcy Code").

4. All capitalized terms used herein shall have the meanings assigned to them in Article 1 of the Plan. Any term used in capitalized form that is not defined in the Plan but that is defined in the Bankruptcy Code or Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules.

# II.
# BACKGROUND

1. On November 18, 1996, Rock Wool filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code.

2. The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On March 10, 1997, the Court approved the appointment by the Bankruptcy Administrator of the Asbestos Claimants Committee.

4. On May 5, 1997, the Court appointed Daniel M. Phillips as Legal Representative to represent Future Claimants, as described in Articles 1.1.88 and 1.1.91 of the Plan, pursuant to 11 U.S.C. § 524(g)(4)(B)(i).

5. Prior to the Petition Date, Rock Wool had been named as a co-defendant in a substantial number of lawsuits alleging personal injury and/or wrongful death from exposure to asbestos-containing products. The lawsuits alleged, in general, that Rock Wool and other defendant manufacturers of asbestos and asbestos-containing products failed to warn of the potential hazard to health from the inhalation of asbestos fibers in their products. From 1974 (the date the first asbestos-related case was filed) until the Petition Date, Rock Wool disposed of approximately 52,483 claims through trial, dismissal, or settlement. On average Rock Wool spent approximately $534.25 per claim, excluding attorneys' fees and defense costs, to dispose of these claims.

6. As of the Petition Date, approximately 94,000 lawsuits on account of Asbestos Bodily Injury Claims were outstanding against Rock Wool. It is anticipated that another 325,000 claims will be filed against Rock Wool, pursuant to an Actuarial Study done on November 7, 1997. The Actuarial Study is attached to the Plan as Exhibit F.

## III.
## THE VOTING

1. Following dissemination of the Solicitation Packages as provided in the Disclosure Statement Order dated July 20, 1999, and the Order approving the Notification Procedure dated October 20, 1999, the Asbestos Claimants Committee properly assisted the Plan Proponent in soliciting votes for the Plan from the impaired classes of Claims by answering various questions from holders of Claims regarding the Plan, with the guidance and advice of the Debtors' counsel, and appropriately soliciting the votes of the impaired classes of Claims in good faith in a manner consistent with the Bankruptcy Code.

2. Each class has accepted the Plan.

3. Section 5.2 of the Plan identifies each of the following Classes as unimpaired and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code: Class 1 (Allowed Secured Claim of SouthTrust Bank), Class 2 (Allowed Secured Claim of Caterpillar Financial), Class 3 (Allowed Environmental Claim against the Debtors), and Class 4 (Allowed Priority Tax Claims).

4. With respect to impaired classes of Claims entitled to vote on the Plan, each of the following classes has accepted the Plan by at least two-thirds in amount and a majority in number of the Claims in each such class actually voting: Class 5 (Unsecured Claims).

5. Class 6 (Allowed Asbestos Bodily Injury Claims Against the Debtor) has voted, by at least 75 percent (75%) of those voting, in favor of the Plan. Pursuant to the Certificate of Acceptances filed with the Court, approximately 32,399 Claimants voted in favor of the Plan and 374 Claimants opposed the Plan, bringing the percentage of those accepting the Plan to 98.86%.

6. Class 7 (Allowed Property Damage Claims Against the Debtor) has voted by at least 75 percent (75%) of those voting in favor of the Plan.

7. Class 8 (Equity Interest in the Debtor) has also accepted the Plan.

8. The tabulation of the ballots are valid and correctly set forth as is required under the Bankruptcy Code.

9. All holders of Claims who are impaired under the Plan, and whose Claims were not the subject of an objection, were mailed Ballots, pursuant to Orders of this Court approving the solicitation of votes and the mailing of ballots and the notification of the hearing on the Confirmation.

## IV
## COMPLIANCE WITH THE REQUIREMENTS OF
## SECTION 1129 OF THE BANKRUPTCY CODE

A. Section 1129(a)(1) Compliance of the Plan with the Applicable Provisions of the Bankruptcy Code.

The Court finds and concludes that the Plan satisfies all the applicable provisions of the Bankruptcy Code.

### Section 1123(a)(1) Designation of Claims and Interests

Section 1123(a)(1) of the Bankruptcy Code provides that a plan must designate classes of claims and interests. In accordance with section 1123(a)(1) of the Bankruptcy Code, Article III of the Plan designates classes of Claims against and Equity Interests in the Debtors other than Administrative Expenses and Tax Claims. Classes of Administrative Expenses and Tax Claims are not required to be designated pursuant to section 1123(a)(1) of the Bankruptcy Code. The Plan adequately and properly classifies all Claims and Equity Interests and, accordingly, satisfies section 1123(a)(1) of the Bankruptcy Code.

### Section 1122(a) Classification

a. Section 1122(a) of the Bankruptcy Code provides that a plan may place a claim or interest in a particular class if such claim or interest is substantially similar to the other claims or interests of such class. A classification scheme satisfies section 1122(a) of the Bankruptcy Code when a reasonable basis exists for the classification scheme, and the claims or interests within each particular class are substantially similar. See In re Boston Post Road Ltd. Partnership, 21 F.3d 477 (2d Cir. 1994), cert. denied, 513 U.S. 1109, 115 S.Ct. 897, 130 L.Ed.2d 782 *(1995);* In re Jersey City Medical Ctr., 817 F.2d 1055, 1060-61 (3d Cir.1987); In re U.S. Truck Co., 800 F.2d 581, 586 (6th Cir.1986); In re LeBlanc, 622 F.2d 872, 879 *(5th* Cir.1980).

b. In accordance with section 1122(a) of the Bankruptcy Code, the Court concludes that Article III of the Plan separately classifies Claims against and Equity Interests in the Debtors together with Claims against or Equity Interests that are substantially similar to the other Claims or Equity Interests of such class. The Plan accordingly satisfies section 1122(a) of the Bankruptcy Code.

### Section 1123(a)(2) Specification of Unimpaired Classes

a. Section 1123(a)(2) of the Bankruptcy Code provides that a plan must specify any class of claims or interests that is not impaired under the Plan. The Plan identifies unimpaired classes of Claims and Equity Interests and provides for their treatment.

b. Section 5.2 of the Plan identifies the following classes as unimpaired, and such classes are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the

Bankruptcy Code: Class 1 (Allowed Secured Claim of SouthTrust Bank), Class 2 (Allowed Secured Claim of Caterpillar Financial), Class 3 (Allowed Environmental Claim Against the Debtor), and Class 4 (Allowed Priority Tax Claims).

      c.     Each of the remaining classes is identified under sections 5.1 of the Plan as impaired.

      d.     The Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

### Section 1123(a)(3) Specification of Impaired Classes

      a.     Section 1123(a)(3) of the Bankruptcy Code provides that a plan must specify the treatment of each impaired class of claims and interests.

      b.     Section 6.1 of the Plan specifies the treatment of each impaired class of Claims and Equity Interests.

      c.     The Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

### Section 1123(a)(4) Same Treatment Within Each Class Unless Holder Agrees to Different Treatment

      a.     Section 1123(a)(4) of the Bankruptcy Code requires a plan to provide the same treatment for each claim or interest of a particular class, unless the holder of the claim or interest agrees to less favorable treatment of such particular claim or interest.

      b.     With respect to each class of Claims and Equity Interests under the Plan, the Plan provides the same treatment for each Claim or Equity Interest in each such class.

### Section 1123(a)(5) Means of Implementation

      a.     Section 1123(a)(5) of the Bankruptcy Code provides that a plan must provide adequate means for its implementation.

      b.     Article X of the Plan provides adequate means for implementation of the Plan. The provisions contained in Article X of the Plan relate to, among other things, the following: implementation of management, date of distribution and the distribution agent, and the distribution of property of the Debtors' estate to those creditors entitled to distributions under the Plan.

      c.     Article XI of the Plan provides for the continuation of certain executory contracts

      d.     Article XII of the Plan establishes the Asbestos Trust Fund, the assumption of liability of the Asbestos Trust for all asbestos bodily injury claims and property damage claims, and proposes the method to fund the Asbestos Trust.

e.  The Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

### Section 1123(a)(7) Selection of Officers and Directors

a.  Section 1123(a)(7) of the Bankruptcy Code requires that the manner of selection of any director, officer, or trustee of the reorganized debtor, or any successor to such officer, director, or trustee, be consistent with the interests of creditors and equity interest holders and with public policy.

b.  In accordance with section 1123(a)(7) of the Bankruptcy Code, Section 10.1 of the Plan provides that the selection of the new management, officers and directors of the Reorganized Debtor shall be at the sole discretion of the Trustee. The Plan further provides for an Executive Management Agreement for George C. Cusick, attached as Exhibit D to the Plan.

c.  In accordance with section 1123(a)(7) of the Bankruptcy Code, section 10.1 further provides for the dissolution of the Board of Directors when the Trustee elects to do so, in accordance with the Rock Wool by-laws.

d.  Section 1123(a)(7) does not apply to either the trustees of the Asbestos Trust or the members of the Trust Advisory Committee established thereunder.

e.  The Plan complies with section 1123(a)(7) of the Bankruptcy Code.

### Section 1123(b)(1) Impairment

Article 3 of the Plan impairs or leaves unimpaired, as the case may be, each class of Claims or Equity Interests. The Plan complies with Section 1123(b)(1) of the Bankruptcy Code.

### Section 1123(b)(2) Executory Contracts and Unexpired Leases

a.  The Debtor has engaged in a thorough review of the executory contracts and unexpired leases to which any of the Debtors is a party.

b.  Article XI of the Plan provides for the assumption of the executory contracts and unexpired leases. Exhibit "G" was prepared after a thorough review of the executory contracts and unexpired leases by the Debtor and the Asbestos Claimants Committee. There are no defaults under any of the executory contracts and unexpired leases.

c.  The assumption and execution pursuant to the Plan of the executory contracts and unexpired leases set forth in Article XI and Exhibit G to the Plan is (I) in the best interests of the Debtor, its estate, and its creditors, (ii) based upon and within the Debtor's sound business judgment, and (iii) necessary to the implementation of the Plan.

d.  The Plan complies with section 1123(b)(2) of the Bankruptcy Code.

6

### Section 1123(b)(6) Other Provisions Not Inconsistent with Applicable Provisions of the Bankruptcy Code

The Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code.

### Section 1129(a)(2) Compliance with Applicable Provisions of the Bankruptcy Code

a.  Section 1129(a)(2) of the Bankruptcy Code requires the proponent of a plan to comply with all of the applicable provisions of the Bankruptcy Code.

b.  The Debtor has complied with the operating guidelines and financial reporting requirements enacted by the Bankruptcy Administrator by (i) timely filing all operating reports and consolidated financial statements and (ii) maintaining and providing proof of insurance.

c.  The Debtor has paid all statutory fees required to be paid during the Chapter 11 Cases.

d.  The Debtor has timely filed with the Bankruptcy Court all schedules, lists of executory contracts, and statements of financial affairs.

e.  The Debtor and its respective directors, officers, employees, agents, and professionals have acted in "good faith" within the meaning of sections 1125(e), 1126(e), and 1129(a)(3) of the Bankruptcy Code.

f.  The Debtor has complied with the provisions of the Bankruptcy Code, the Bankruptcy Rules, applicable non-bankruptcy law, the Local Bankruptcy Rules, and the specific rules of the Bankruptcy Court throughout the Chapter 11 Case.

g.  The solicitation of votes from holders of Claims was made following approval and dissemination of the Disclosure Statement to holders of Claims and Equity Interests in classes that are impaired under the Plan and was made in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. The Ballots of holders of Claims entitled to vote on the Plan were properly solicited and tabulated.

h.  The Debtor has complied with all orders of the Bankruptcy Court and has fulfilled all of the obligations and duties owed to the estate as required by and set forth in sections 1107 and 1108 of the Bankruptcy Code.

i.  The Debtor has complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code, including the provisions governing notice, disclosure, and solicitation in connection with the Plan, the Disclosure Statement, and all other matters considered by the Bankruptcy Court in connection with the Chapter 11 Case.

j.  Good, sufficient, and timely notice of the Confirmation Hearing and all other

hearings in the Chapter 11 Cases has been given to all holders of Claims and Equity Interests and all other parties in interest to whom notice was required to have been given. The Debtor published notice of the Confirmation Hearing, voting requirements and procedures in the USA TODAY on October 25, 1999. The Debtor published the same notice in Mealey's Asbestos Reporter on October 22, 1999.

      k.      The Debtor has complied with section 1129(a)(2) of the Bankruptcy Code.

### Section 1129(a)(3) Proposal of the Plan in Good Faith

      a.      Section 1129(a)(3) of the Bankruptcy Code states that a plan must be proposed in good faith and not by any means forbidden by law.

      b.      The Debtor, the Asbestos Claimants Committee and the Legal Representative have been closely involved in all negotiations regarding the Plan.

      c.      The Court has examined the totality of the circumstances surrounding the formulation of the Plan. The Plan is based on extensive negotiations among the Debtor, the Asbestos Claimants Committee, the Legal Representative, and other parties in interest.

      d.      The Plan has been proposed with the legitimate and honest purpose of reorganizing the Debtor's businesses and affairs, restructuring its asbestos-related liability, and maximizing the value available to creditors.

      e.      The Plan was proposed in good faith and not by any means forbidden by law, and therefore complies with section 1129(a)(3) of the Bankruptcy Code.

### Section 1129(a)(4) Bankruptcy Court Approval of Certain Payments as Reasonable

      a.      Section 1129(a)(4) of the Bankruptcy Code requires that all payments made or to be made by the Debtor, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, have been approved by, or are subject to the approval of, the court as reasonable.

      b.      The Chapter 11 Operating Reports and the Applications for Interim Compensation and Expenses for all Professionals are a matter of public record. Those interim applications which have been approved by the Court are for fees and expenses of professionals which are reasonable and payment of said fees and expenses has been within the Debtor's sound business judgment.

      c.      Pursuant to section 2.1 of the Plan, all payments to professionals will be (i) subject to review and approval by the Bankruptcy Court upon final application pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code, or (ii) paid in accordance with prior orders of the Bankruptcy Court approving the retention of certain professionals.

      d.      The Plan complies with section 1129(a)(4) of the Bankruptcy Code.

### Section 1129(a)(5) Disclosure of Identity and Affiliations of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy

a. The Debtor has disclosed in the Disclosure Statement and Plan the identity of the individuals who will hold positions with the Debtor immediately after confirmation of the Plan and have shown that the service of such individuals is consistent with the interests of creditors and with public policy.

b. The Debtor has disclosed in the Disclosure Statement and the Plan the identity of any insider who will be employed or retained by the Debtor immediately after confirmation of the Plan and the nature of any compensation for such insider.

c. The Plan complies with section 1129(a)(5) of the Bankruptcy Code.

### Section 1129(a)(6) Approval of Rate Changes

a. Section 1129(a)(6) of the Bankruptcy Code requires a debtor to obtain the approval of any governmental regulatory commission, with jurisdiction over the debtor, with respect to any rate changes provided for in the debtor's plan of reorganization.

b. The Plan does not provide for any changes in rates that require regulatory approval of any governmental agency.

c. The Plan complies with section 1129(a)(6) of the Bankruptcy Code.

### Section 1129(a)(7) Best Interests of Creditors

a. Section 1129(a)(7) of the Bankruptcy Code requires that each creditor or equity interest holder in an impaired class must either have voted to accept the plan of reorganization, or will receive or retain under such plan on account of such claim or interest property of a value, as of the effective date of such plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

b. Based upon the evidence presented at the Confirmation Hearing and in the Disclosure Statement and Plan, with respect to each impaired class of Claims and Equity Interests for each Debtor, each holder of a Claim or Equity Interest will receive or retain under the Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

c. All impaired classes of claims have voted to accept the Plan.

d. The Plan complies with section 1129(a)(7) of the Bankruptcy Code.

### Section 1129(a)(8) Acceptance of the Plan by Each Impaired Class

    a.    Section 1129(a)(8) of the Bankruptcy Code requires that, with respect to each class of claims or interests under a plan, such class has either accepted the plan or is not impaired under the plan.

    b.    All impaired classes of Claims and Equity Interests have voted to accept the Plan.

    c.    Each of the unimpaired classes of Claims under the Plan and each holder of a Claim in each such class is conclusively presumed to have accepted the Plan, and, in accordance with section 1126(f) of the Bankruptcy Code, solicitation of acceptance with respect to each such class is not required.

    d.    The Plan complies with section 1129(a)(8) of the Bankruptcy Code.

### Section 1129(a)(9) Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code

    a.    Section 1129(a)(9) of the Bankruptcy Code provides for certain mandatory treatment of claims entitled to priority under the Bankruptcy Code.

    b.    Section 2.1 of the Plan provides that each holder of an Allowed Administrative Expense will be paid in full, in cash, on the Effective Date; provided, however, that (i) Administrative Expenses representing (a) liabilities incurred in the ordinary course of business by the Debtor in Possession or (b) liabilities arising under loans or advances to the Debtor in Possession, whether or not incurred in the ordinary course of business, shall be assumed and paid by the respective Reorganized Debtor in accordance with the terms and conditions of the particular transactions and any agreements relating thereto, (ii) the date for the filing of all applications for final allowances of compensation or reimbursement of expenses under section 330 of the Bankruptcy Code shall be January 31, 2000, and (iii) if an Administrative Expense, other than a trade payable incurred in the ordinary course of business by the Debtor in Possession, is a Contingent Claim or Unliquidated Claim as of the Effective Date, the Debtors may request the Bankruptcy Court to estimate such Administrative Expense pursuant to section 502(c) of the Bankruptcy Code, in which case the Allowed Amount of such Administrative Expense shall be paid in full, in cash, on the date that an order estimating such Administrative Expense becomes a Final Order. The deadline for the filing of any Requests for Payment of Administrative Expenses shall be December 31, 1999.

    c.    As required by section 1129(a)(9)(C) of the Bankruptcy Code, section 2.3 of the Plan provides that, each holder of an Allowed Priority Tax Claim shall receive monthly cash payments for twelve months from the Effective Date, pursuant to an amortization schedule.

    d.    The Debtors have sufficient cash to fund payments of Allowed Administrative Expenses and Allowed Tax Claims, and will have sufficient cash in the future to do so, according to evidence presented at the Confirmation Hearing.

  e.  The Plan complies with section 1129(a)(9) of the Bankruptcy Code.

### Section 1129(a)(10) Acceptance by at Least One Impaired Class

  a.  Section 1129(a)(10) of the Bankruptcy Code provides that at least one impaired class of claims must accept a plan of reorganization, determined without including any acceptance of such plan by any insider.

  b.  At least one impaired class in the Plan has voted to accept the Plan determined without including any acceptance of the Plan by an insider holding a Claim in each such class. In fact, all classes of impaired claims, classes 5, 6, and 7, and the Equity Interest, Class 8, have voted to accept the Plan.

  c.  The Plan complies with section 1129(a)(10) of the Bankruptcy Code.

### Section 1129(a)(11) Feasibility of the Plan

  a.  Section 1129(a)(11) of the Bankruptcy Code requires that a plan be "feasible" and that the debtor or its successor under such plan is not likely to require liquidation or further financial reorganization, except as provided under such plan.

  b.  On the basis of the information presented in the Plan, the evidence presented at the Confirmation Hearing, and at prior hearings held by the Court in connection with confirmation of the Plan and approval of the Plan and Disclosure Statement, and as detailed in the Disclosure Statement, the Court concludes that confirmation of the Plan is not likely to be followed by the liquidation of, or the need for further financial reorganization of, the Debtor.

  c.  The Plan complies with section 1129(a)(11) of the Bankruptcy Code.

### Section 1129(a)(12) Payment of Bankruptcy Fees

  a.  Section 1129(a)(12) of the Bankruptcy Code requires that either all fees payable under 28 U.S.C. § 1930, as determined by the court at the hearing on confirmation of the plan, have been paid or that the plan provides for the payment of all such fees on the effective date of the plan.

  b.  Section 15.5 of the Plan provides that all fees payable pursuant to 28 U.S.C. § 1930 shall be paid by the Reorganized Debtor on the Effective Date.

  c.  The Plan complies with section 1129(a)(3) of the Bankruptcy Code.

### Section 1129(a)(13) Retiree Benefits

  a.  Section 1129(a)(13) of the Bankruptcy Code requires the continuation of payment of all retiree benefits, at the level established pursuant to section 1114 of the Bankruptcy Code at any time prior to confirmation of the plan, for the duration of the period for which the debtor has

obligated itself to provide such benefits.

  b. Section 11.1 of the Plan provides that all executory contracts that are deemed assumed under the Plan, and the Debtors' obligations under such plans, policies, and programs shall be deemed assumed pursuant to section 365(a) of the Bankruptcy Code, survive confirmation of the Plan, remain unaffected thereby, and not be discharged in accordance with section 1141 of the Bankruptcy Code. This assumption includes payment of all retiree benefits. Section 5.2 of the Disclosure Statement further articulates the Debtor's assumption of the retiree benefit payments.

  c. The Plan accordingly complies with section 1129(a)(13) of the Bankruptcy Code.

### Section 1129(d) Tax Avoidance

  a. No objection has been filed by any governmental unit or any party in interest alleging that the principal purpose of the Plan is avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933, as amended.

  b. The principal purpose of the Plan is not avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933, as amended.

  c. The Plan complies with section 1129(d) of the Bankruptcy Code.

### Bankruptcy Rule 3016(b)

The Plan is dated and identifies the entity submitting the Plan.

## V
## DISTRIBUTIONS

Sections 2.2, 6.1, 8.2, 10.2, 10.3, 10.6 and 13.2 of the Plan contain the provisions governing distributions under the Plan, and such provisions are fair and reasonable.

## VI
## PLAN MODIFICATIONS

  a. On September 14, 1999, the Debtor filed with the Court a Motion to Modify the Plan and a Motion for Order Approving Modifications to the Second Amended and Restated Plan of Reorganization and for Order Determining that the Modifications do not Adversely Change the Treatment of the Claim of any Creditor or the Interest of any Equity Security Holder who has not Accepted in Writing the Modifications. The Motion to Modify the Plan sought to re-classify the Internal Revenue Service, a Class 4 Priority Tax Claim, from impaired to unimpaired. These Motions were granted by Order of this Court on October 21, 1999.

b. The Plan Modifications do not adversely change the treatment of the Claim of any creditor. To the contrary, the Plan Modifications clarify certain provisions of the Plan. The Plan Modifications preserve the Plan, as negotiated, and the rights of all parties set forth therein.

c. Disclosure of the Plan Modifications at the prior hearings held by this Court, and in the revised Plan Summary and the Publication Notices, constituted adequate and appropriate notice of the Plan Modifications. The Plan Modifications comply in all respects with section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and all other provisions of the Bankruptcy Code. No additional disclosure under section 1125 of the Bankruptcy Code is or was required with respect to the Plan Modifications, other than through the manner described in this paragraph.

d. Accordingly, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims that have accepted or are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan Modifications.

## VII.
## CONDITIONS PRECEDENT TO CONFIRMATION

a. The conditions precedent set forth in Article I, Section 1.1.29 of the Plan are hereby approved by the Court, and are incorporated by reference as if they had been fully set forth herein. They will be satisfied by entry of the order confirming the Plan.

b. Class 6 (Asbestos Bodily Injury Claims) has voted, by at least 75 percent (75%) of those voting, in favor of the Plan.

c. Class 7 (Asbestos Property Damage Claims) has voted, by at least 75 percent (75%) of those voting, in favor of the Plan.

d. The Debtor, Asbestos Claimants Committee and Legal Representative have advised the Court that this order is, in form and substance, acceptable to the parties.

## VIII
## THE TRANSFERS OF PROPERTIES UNDER THE PLAN ARE GOVERNED BY THE EXEMPTIONS PROVIDED IN SECTION 1146(c) OF THE BANKRUPTCY CODE

a. In order to fund the Plan, the Debtor will be distributing to the Asbestos Trust the assets described in Section 10.9 of the Plan.

b. Consistent with the requirements of section 1146(c) of the Bankruptcy Code, the

transfers are not subject to taxation under any state or local law imposing a stamp, transfer, or similar tax.

The foregoing constitutes the Court's findings of fact and conclusions of law.

### ORDER ON CONFIRMATION OF PLAN

This case having come on for hearing on confirmation of the Second Amended and Restated Plan of Reorganization, as previously amended by Order dated October 21, 1999 before the Court, Honorable Thomas B. Bennett, United States Bankruptcy Judge presiding, and the issues having been duly heard and Findings of Fact and Conclusions of Law having been entered simultaneously herewith,

It is Ordered and Adjudged:

### Section 524(g)(4)(a) Injunction

a.  The creation of the Asbestos Trust, to which all Asbestos Bodily Injury Claims and Asbestos Property Damage Claims, Classes 6 and 7, respectively, are being channeled, as described in the Plan, is hereby established.

b.  The trustees of the Asbestos Trust, as disclosed at the Confirmation Hearing, are and hereby are Sylvester F. Miniter, III and the Wilmington Trust Company. The members of the Trustees' Advisory Committee (the "TAC") as disclosed at the Confirmation Hearing and in the Disclosure Statement are and hereby are Nancy Worth Davis, Mary Skelnik, and Sanders McNew.

c.  This Confirmation Order contains and constitutes the Asbestos Bodily Injury and Property Damage Permanent Channeling Injunction.

d.  At the time of the order for relief with respect to Rock Wool, Rock Wool had been named as a defendant in personal injury, wrongful death, and property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products.

e.  In order to supplement the injunctive effect of the Discharge Injunction entered below pursuant to 11 U.S.C. § 1141(d), and, pursuant to 11 U.S.C. § 524(g), the Court hereby provides for the Permanent Channeling Injunction to be entered and to take effect as of the Confirmation Date, pursuant to Articles 14.3, 14.31, 14.3.1.1 and 14.3.1.2 of the Plan.

f.  Pursuant to the Plan, the Asbestos Trust will be and hereby is funded with all of the assets listed in Article 10.9 of the Plan.

g.  Pursuant to the Plan, the Asbestos Trust is and hereby is partly funded by all of the common stock of Rock Wool. The Asbestos Trust shall and hereby does own all of the voting shares of Rock Wool.

      h.     The Debtor is likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Claims that are addressed by this Channeling Injunction.

      i.     The actual amounts, numbers, and timing of the future Asbestos Demands cannot be determined.

      j.     Pursuit of the Asbestos Demands outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with Claims and future Demands.

      k.     The terms of the Permanent Channeling Injunction, including any provisions barring actions against third parties pursuant to section 524(g)(4)(A), are set out in the Plan and in the Disclosure Statement.

      l.     The Plan establishes, in Classes 6 and 7 (Asbestos Personal Injury Claims and Asbestos Property Damage Claims), separate classes of claimants whose Claims are to be addressed by the Asbestos Trust.

      m.     Classes 6 and 7(Asbestos Bodily Injury Claims and Asbestos Property Damage Claims) have both voted, by at least 75 percent (75%) of those voting, in favor of the Plan.

      n.     Pursuant to court orders or otherwise, the Asbestos Trust shall and hereby does operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of present Claims and future Demands, or other comparable mechanisms, that provide reasonable assurance that the Asbestos Trust will value, and be in a financial position to pay, present Claims and future Demands that involve similar claims in the same manner.

      o.     The Legal Representative, Daniel M. Phillips, was appointed as part of the proceedings leading to issuance of the Permanent Channeling Injunction for the purpose of protecting the rights of persons that might subsequently assert Demands that are addressed in the Permanent Channeling Injunction and transferred to the Asbestos Trust.

      p.     Identifying each Protected Party ("Protected Party" as that term is defined in the Plan) in the Permanent Channeling Injunction is fair and equitable with respect to persons that might subsequently assert Demands against each such Protected Party, in light of the benefits provided, or to be provided, to the Asbestos Trust by or on behalf of any such Protected Party.

      q.     The Asbestos Trust satisfies the requirements for a trust under section 524(g) of the Bankruptcy Code.

      r.     The Court has jurisdiction to enter the Permanent Channeling Injunction under sections 1334(a), (b), and (d) of title 28 of the United States Code.

      s.     Sections 105(a) and 524(g) of the Bankruptcy Code permit approval and entry of

the Permanent Channeling Injunction, especially where, as here, such injunction is essential to the formulation and implementation of the Plan as provided in section 1123(a)(5) of the Bankruptcy Code, confers material benefits on the Debtor's estate, is in the best interests of holders of Claims against the Debtors, and complies in all respects with the requirements of section 524(g) of the Bankruptcy Code.

  t. The Permanent Channeling Injunction is consistent with sections 105 (a), 524(g), and 1129 of the Bankruptcy Code and other applicable provisions of the Bankruptcy Code, and the Permanent Channeling Injunction is in the best interests of the Debtor's estate. See In re Eagle-Picher Industries, Inc., et. al. 203 BR 256 (Bankr. S.D. Ohio 1996); A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 1002-03 (4th Cir. 1986), cert. denied, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177(1986); In re Johns-Manville Corp., 801 F.2d 60, 63-64 (2d Cir. 1986).

  u. Pursuant to Sections 105(a) and 524(g) of the Bankruptcy Code, from and after the Effective Date, every Entity be, and hereby is, permanently enjoined from taking any of the following actions for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Asbestos Bodily Injury Claims or Asbestos Property Damage Claims (other than actions brought to enforce any right or obligation under the Plan, any Exhibits to the Plan, or any other agreement or instrument between any of the Debtor or the Reorganized Debtor and the Asbestos Trust, which actions shall be in conformity and compliance with the provisions of the Plan):

   1. commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without express or implied limitation, a judicial, arbitral, administrative, or other proceeding) in any forum against or affecting any Protected Party or any property or interests in property of any Protected Party;

   2. enforcing, levying, attaching (including, without express or implied limitation, any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Protected Party or any property or interests in property of any Protected Party;

   3. creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Protected Party or any property or interests in property of any Protected Party;

   4. setting off, seeking reimbursement of, contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interests in property of any Protected Party; and

   5. proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos Trust, except in conformity and compliance therewith.

Nothing contained in this paragraph, however, shall constitute or be deemed a waiver of any

claim, right, or cause of action that the Debtor, the Reorganized Debtor, or the Asbestos Trust may have against any Entity in connection with or arising out of an Asbestos Bodily Injury Claim or Asbestos Property Damage Claim, and the foregoing injunction shall not apply to the assertion of any such claim, right, or cause of action by the Debtor, the Reorganized Debtor, or the Asbestos Trust.

### Confirmation of the Plan

It is further **ORDERED** that:

a.  The Second Amended and Restated Plan of Reorganization, as modified in the manner to which reference is made in this Order, be, and it hereby is, **CONFIRMED**.

b.  The record of this Confirmation Hearing be, and it hereby is, closed.

c.  The provisions in Articles 2, 6, 8, 10, and 13 of the Plan governing distributions, reserves, and the procedures for resolving and treating Disputed Claims under the Plan be, and they hereby are, approved and found to be fair and reasonable.

d.  In accordance with section 1141 of the Bankruptcy Code, the provisions of the Plan be, and they hereby are, binding upon the Debtor, and any other entity that is giving or receiving property under the Plan, any lessor or lessee of property to or from the Debtor, and any holder of a Claim against or Equity Interest in the Debtor, whether or not the Claim or Equity Interest of such creditor or Equity Interest holder is impaired under the Plan and whether or not such creditor or Equity Interest holder has filed, or is deemed to have filed, a proof of Claim or proof of Equity Interest or has accepted the Plan.

e.  On the Effective Date, in accordance with section 1141 of the Bankruptcy Code and section 15.10 of the Plan, the Reorganized Debtor be, and it hereby is, revested with the assets of the Debtor free and clear of all Encumbrances, Claims, Equity Interests, and other interests, except to the extent specifically provided herein or in the Plan.

f.  The transfer of the books and records as contemplated in Article 12.2 of the Plan does not result in the destruction or waiver of any applicable privileges pertaining to such books and records.

g.  In exchange for the consideration provided for under the Plan, and in accordance with section 1141 of the Bankruptcy Code, the Debtor be, and hereby is, **DISCHARGED** and **RELEASED** of and from any and all Claims, including, without limitation, Asbestos Bodily Injury Claims and Asbestos Property Damage Claims, against the Debtor or any part of its respective estate that arose before the Effective Date, including, without limitation, any interest accrued or expenses incurred thereon from and after the Debtor's Petition Date or any Claim of a kind specified in sections 502(g) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such Clam is filed or deemed filed under section 501 of the Bankruptcy Code, (1) such Claim is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such Claim has accepted the Plan.

h. In accordance with section 1142 of the Bankruptcy Code, the Debtor and any other Entity designated pursuant to the Plan be, and they hereby are, authorized, empowered and directed to execute, deliver, file and record any document, and to take any action necessary or appropriate to implement, consummate and otherwise effect the Plan in accordance with its terms in all material respects, and all such entities shall be bound by the terms and provisions of all documents executed and delivered by them necessary or appropriate to effectuate the transactions contemplated by the Plan.

i. All entities holding Claims against or Equity Interests in the Debtors that are treated under the Plan be, and they hereby are, directed to execute, deliver, file or record any document, and to take any action necessary to implement, consummate and otherwise effect the Plan in accordance with its terms, and all such entities shall be bound by the terms and provisions of all documents executed and delivered by them in connection with the Plan.

j. On the Effective Date, pursuant to sections 365(a) and 365(f)(1) of the Bankruptcy Code, all executory contracts and unexpired leases of the Debtors identified to be assumed in accordance with Article XI of the Plan shall be, and they hereby are, deemed assumed by the Debtor, notwithstanding any provision in such contracts or leases prohibiting assignment or transfer.

k. Any Claims created by the expiration or termination of any executory contract or unexpired lease prior to the date of entry of this order or the rejection pursuant to section 11.2 of the Plan of executory contracts or unexpired leases, if not heretofore evidenced by a filed proof of claim, shall be filed and served on the Debtor within thirty (30) days from the entry of this Order. Any Claims for which a proof of claim is not filed and served within such time shall be forever barred from assertion and shall not be enforceable against the Debtor, its estate, assets, properties, or interests in property, or the Reorganized Debtor or its estates, assets, properties, or interests in property.

l. The Plan Modifications, including, without limitation, the amended Asbestos Trust Agreement, set forth in Debtor's Exhibit A, be, were deemed by Order of this Court on October 20, 1999, to be either technical changes or clarifications that do not adversely change the treatment of the Claim of any creditor of the Debtors or have been consented to by the entities affected thereby, and the Debtor has executed and filed with the Court an amended Plan which shall reflect the Plan Modifications.

m. The Debtor is hereby, subject to further order of this Court, authorized to amend or modify the Plan at any time prior to the Effective Date, but only in accordance with section 7.1 of the Plan and section 1127 of the Bankruptcy Code.

n. In the event of any inconsistency between the Plan and any agreement, instrument or document intended to implement the Plan and this Confirmation Order, the provisions of this Confirmation Order shall govern and shall supersede any orders of this Court issued prior to the Effective Date that may be inconsistent herewith.

o. The parties to any agreement or other document that is an exhibit to the Plan (the "Plan Exhibits") shall be authorized to make ministerial modifications to such Plan Exhibits so long as the modifications are consistent with the requirements of the Confirmed Plan and the material provisions of the Plan Exhibits.

p. Until the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over the Debtor, its properties and operations. On and after the Effective Date, the Bankruptcy Court retains exclusive jurisdiction for all purposes relating to the Asbestos Trust and the Permanent Channeling Injunction with the effect that any party challenging any such injunctions shall be required to raise such challenge in the Bankruptcy Court. In addition, on and after the Effective Date, in accordance with Article XVI of the Plan and sections 105(a) and 1142 of the Bankruptcy Code, the Debtor, its properties and its operations shall be released from the custody and jurisdiction of the Bankruptcy Court, except that the Bankruptcy Court retains jurisdiction over, and if the Bankruptcy Court exercises its retained jurisdiction, shall have exclusive jurisdiction over, all matters arising out of or related to the Chapter 11 Case and the Plan or otherwise enumerated in Article XVI of the Plan. To the extent necessary to comply with section 524(g) of the Bankruptcy Code, the District Court shall have jurisdiction over any proceeding that involves the validity, application, construction, or modification of the Asbestos Trust and the Permanent Channeling Injunction.

q. The obligations to the estate, and otherwise, of Daniel M. Phillips, the Legal Representative, shall cease and terminate on the Effective Date. Mr. Phillips shall file his Application for Final Compensation and Expenses on or before January 31, 2000.

r. The obligations to the estate, and otherwise, of the Asbestos Claimants Committee, shall cease and terminate on the Effective Date. The Committee shall file its Application for Final Compensation and Expenses on or before January 31, 2000.

s. The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent.

t. This Findings of Fact, Conclusions of Law and Order on Confirmation of Second Amended and Restated Plan of Reorganization Filed By Rock Wool Manufacturing Company once executed by the respective U.S. District Court Judge and U.S. Bankruptcy Court Judge are to be entered by the Clerk of the United States District Court for the Northern District of Alabama, and the Clerk of the United States Bankruptcy Court for the Northern District of Alabama. The Clerk of the U.S. Bankruptcy Court for the Northern District of Alabama shall see to distribution thereof.

**CONFIRMED, ORDERED AND DECREED** on this the 3RD day of December, 1999.

_____
THOMAS B. BENNETT
UNITED STATES BANKRUPTCY JUDGE

**AFFIRMED, ORDERED AND DECREED** on this the $\underline{6}$ day of December, 1999.

_____
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

SCANNED
DEC 6 1999
BY

20